UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

_____

JOHN T. CHASE,

               PLAINTIFF,

               -against-

PAUL CZAJKA, J.F.C, KRISTIN CHASE,
COLUMBIA COUNTY INVESTIGATOR SKYPE,
COLUMBIA COUNTY SHERIFF WALTER SHOOK,
COUNTY OF COLUMBIA, BARBARA SCARDUZIO,
FRANCES FERNANDEZ AND OTHER JOHN DOE
DEFENDANTS.

_____

                   PLAINTIFF'S OBJECTIONS
                     TO THE SUPPLEMENTAL
       REPORT AND RECOMMENDATION

                   Civil Case No. : 04-CV-8228

STATE OF NEW YORK    )
                        ) ss.:
COUNTY OF NEW YORK  )

      JOHN T. CHASE, being duly sworn, deposes and says that:

1. I am the Plaintiff herein and am presently representing myself Pro Se.

2. I submit the following as Objections to the Supplemental Report and Recommendation of

Hon. Chief US Magistrate Andrew Peck in this matter dated May 12, 2005 consistent with the

Order granted after the US Supreme Court Decision in Exxon Mobil Corp. v. Saudi Basic

Industries Corp., No.03-1696 and respectfully submit that, contrary to the Supplemental Report

and Recommendation, the action and case herein should not be dismissed under a combination of

Rooker - Feldman and the Domestic Relations exception.

3. Further, while I oppose transfer of the case at this time to the Northern District of New York

1

and believe there is a sufficient nexus and convenience considerations to venue the case in the Southern District, I would consent to transfer to the Northern District as alternative relief to outright dismissal.

4. Respectfully, Chief Magistrate Peck is misreading and misinterpreting my claims raised in this action and these mistakes are relied upon in reaching the outcome in the Report and Recommendation.

5. For example, at page 12 of the Report, it is quoted that "Chase is merely bringing 'constitutional claims attacking a state court judgment' which cannot be reviewed by this Court", stating that the claims were brought over "dissatisfaction" with state court decision and judgments.  This is false, untrue, improper analysis, and contrary to statements made in support of my claims and action herein.

6. Respectfully, these statements by the Hon. Magistrate and misreading of my complaints and the Report and Recommendation itself expressly run afoul of the US Supreme Court's recent Decision in Exxon Mobil Corp v Saudi Basic Indus. Corp, 125 S. Ct. 1517 (2005).

7. The US Supreme Court recently stated as I stated in my prior papers, that "This Court has repeatedly held that 'the pendency an action in the state court is no bar to proceedings concerning the same matter in Federal court having jurisdiction". Exxon Mobil, 125 S.Ct. 1517 citing McClellan v. Carland, 217 US 268, 282, 30 S.Ct. 501, 54 L.Ed 762 (1910) and others.

8. Further, as also recently stated by the US Supreme Court, "Since Feldman, this Court has never applied Rooker-Feldman to dismiss an action for want of jurisdiction." See, Exxon Mobil, 125 S.Ct 1517 (2005).

2

9. This Court properly has original jurisdiction, Subject Matter Jurisdiction under the
federal question rules over the federal claims herein which are independent, separate and distinct
from any judgment, decision, or determination made in state family court and these claims have
never been heard or litigated in state court.

10. Respectfully, the Hon. Chief Magistrate appears to have overlooked my prior papers and
mistakenly interpreted my claims as I previously quoted the US Supreme Court in my recent
submission in submitting that "Nor does Sec. 1257 stop a district court from exercising subject
matter jurisdiction simply because a party attempts to litigate in federal court a matter previously
litigated in state court. If a federal plaintiff 'presents some independent claim, albeit one that
denies a legal conclusion that a state court has reached in a case to which he was a party . . . .
then there is jurisdiction and state law determines whether the defendant prevails under
principles of preclusion", citing GASH Assoc. v Village of Rosemont, 995 F2de 726, 728 (C.A.
7 1993). I, however, am not attempting to litigate claims previously heard in state court as not
only were the claims under 42 USC Sec. 1983 not raised in Family Court but Family Court had
no authority to hear these claims anyhow and the claims have not been heard but this quote from
the Exxon case makes it clear that if I had litigated the claims in state court, I could still litigate
in federal court and there would be jurisdiction and only Preclusion law would determine if the
claims could go forward.

11. As I have repeatedly and consistently stated in multiple submissions to this Court by now,
the issue and claim that Defendant Kristin Fernandez Chase conspired with any of the other
named Defendants was Never brought up, never litigated, and never raised in any proceeding

3

before Defendant Family Court Judge Paul Czajka.

12. Therefore, these claims are separate, distinct and independent from any judgment, decision or determination by Defendant Family Court Judge Czajka, and having never been raised in front of this Judge were never decided either explicitly or implicitly and are claims made under 42 USC Sec. 1983 and this Court has original subject matter jurisdiction over these claims and the action is not subject to dismissal on Rooker Feldman grounds.

13. Defendants have failed to submit a single document or record or exhibit to contradict this position and any such assertion would be false, frivolous and sanctionable.

14. Neither Defendants Skype, Scarduzio, Frances Fernandez, the County of Columbia, the Columbia County Sheriff's Dept nor Defendant Paul Czajka were named or made parties to the state court proceedings before Family Court Judge Czajka and therefore Rooker Feldman has no application to any of the claims against these defendants on this basis alone and that all such claims are independent and separate from any state court judgment, decision or determination.

15. Respectfully, most all of the cases, if not all, cited by the Hon. Chief Magistrate command a recommendation and decision in favor of denying the motions to dismiss by the Defendants in this case.

16. The case of Washington v Wilmore, No. 04-1818, ___ F3d ___, 2005 WL 977009, 4th Circuit decided April 28, 2005 after the recent US Supreme Court case in Exxon Mobil was cited by the Hon. Chief Magistrate as support for the determination that my action should be dismissed under Rooker Feldman.

4

17. Yet, in the Washington v Wilmore case above, the federal plaintiff successfully stated a constitutional violation alleging investigatory action by a government officer which was deliberately false or fabricated and the Circuit Court did Not dismiss under Rooker Feldman and further affirmed a denial of immunity to certain state actors in the case.

18. Even though the Defendant argued in Wilmore that the case should be dismissed arguing that if the federal court determined the conduct was a constitutional violation this would imply that the state court judgment was invalid, this argument was denied by the Circuit Court of Appeals.

19. The Circuit Court further found that to do so would not violate the "inextricably intertwined" requirements of Rooker Feldman and noted that the issues of the officer defendant's truthfulness was not intertwined with the state court judgment even though the officer had testified in the state court about investigative activities with a state court defendant who became a plaintiff in federal court. See, Wilmore, above.

20. In this action, Columbia County Investigator Skype never even testified at any of the initial hearings on the Ex Parte Order of Protection in October of 2003, nor did he testify in further testimony in Nov. Of 2003 and thus Investigator's Skype's conduct can in no rationale or plausible way be inextricably intertwined with any judgments, decisions or determinations actually made by Defendant Czajka. I now have however, written reports and documents from Col. Cty DSS that specifically contradict reports and statements by Inv. Skype and these fabricated reports by Skype are at the center of the illegal process and conspiracy that I am

5

claiming in this action. I did not obtain these reports until well "into" the "process" with Defendant Czajka, nearly 12 months in fact, as my first attorney Andrew Jacobs, Esq., never obtained these Discovery items for reasons I now question although Kevin R. Hall, Esq., had specifically requested such items in the first Habeus Petition and this Discovery was shut down and denied while Defendant Paul Czajka was still involved in my case. Shortly after Defendant Czajka was removed from my case I obtained such documentation and records from DSS on my own.

21. More importantly, the key part of the Wilmore Decision from the 4th Circuit decided in April 2005 post Exxon Mobil from March 2005 is the notion which I have been repeatedly raising in my submissions is that there is a distinction between an attack on a state court judgment and the conduct of others surrounding that judgment.

22. The Wilmore Court states," Washington challenges not his conviction, but rather one aspect of the means by which that conviction was achieved. ( Cf. *Jordahl v Democratic Party of Va., 122 F. 3d 192, 202 4th Cir. 1997)* ( distinguishing between 'actions seeking review of the state court decisions themselves and those cases ***challenging the constitutionality of the process by which the state court decisions resulted***' )" ( emphasis added ). See, Wilmore.

23. The Decision goes on to say, "Put differently, Washington's claim of injury rests not on the state court judgment itself, but rather on the alleged violation of his constitutional rights by Wilmore", who was not a party in the State Court but was an investigative witness, like Skype and others in my case. See, Wilmore above.

6

24. In that case, Washington was permitted to proceed with a federal claim and the facts in my case are even more egregious and the claims and action should survive and proceed.

25. Additionally, the Washington v Wilmore case cited by Hon. Chief Magistrate Peck goes on to acknowledge and recognize the constitutional right to "not be deprived of liberty as a result of the fabrication of evidence by a government officer acting in an investigative capacity," citing Zahrey v Coffey, 221 F.3d 342, 349 ( 2d Cir. 2000 ).

26. I respectfully point out that the right addressed in the Zahrey case is from the Second Circuit Court of Appeals which I understand is the Appellate Court for all of the federal district Courts in New York including both the Southern and Northern District of New York which I understand is controlling or at least substantial in these matters

27. The Wilmore Decision cited by Hon. Chief Magistrate Peck herein goes on to note that the fabrication of evidence may have the natural consequence of "a prosecutor's decision to charge, a grand jury's decision to indict, a prosecutor's decision not to drop charges but to proceed to trial - none of these decisions will shield a police officer who deliberately supplied misleading information that influenced the decision." Wilmore, citing Jones v City of Chicago, 856 F2d 985, 994 ( 7th Cir 1988 ).

28. In the Zahrey v Coffey case, the Second Circuit Court of Appeals held that the right "not to be deprived of liberty as a result of any government officer's fabrication of evidence" was a "right" which was "clearly established in 1996" and further that "it was also then well established that for purposes of actions under 1983 and Bivens, a person is responsible for the

7

natural consequences of his actions", Zahrey, 221 F3d 342 ( 2d 2000 ) citing Monroe, 365 US at 187.

29. The Zahrey case cited an additional case from the Second Circuit involving the fabrication of evidence in Ricciuti v NYC Transit Police Dept, 124 F3d 123 ( 2d Cir. 1997 ).

30. In this Ricciuti case, the Second Circuit reversed summary judgment in favor of certain government officers on a claim of fabrication of evidence and the case was remanded to let the federal claims go forward.

31. The Second Circuit used very strong language in this case which to me seems basic and obvious, so obvious, basic and fundamental it should not even need to be said. "When a police officer creates false information likely to influence a jury's decision and forwards that information to prosecutors, he violates the accused constitutional right to a fair trial, and the harm occasioned by such an unconscionable action is redressable in an action for damages under 42 USC Sec. 1983." Ricciuti, 124 F3d 123 ( 2d 1997 ).

32. This Decision says more by stating "To hold that police officers, having lawfully arrested a suspect, are then free to fabricate false confessions at will, would make a mockery of the notion that Americans enjoy the protection of due process of law and fundamental justice. Like a prosecutor's knowing use of false evidence to obtain a tainted conviction, a police officer's fabrication and forwarding to prosecutors of known false evidence works an unacceptable 'corruption of the truth-seeking function of the trial process." Ricciuti above citing United States v Agurs, 427 US 97, 104 ( 1976 ); Giglio v United States, 405 US 150, 153 ( 1972 ); Mooney v

8

Holohan, 294 US 103, 112 ( 1935 ).

33. Likewise, I have brought an action seeking redress of this harm and money damages under 42 USC 1983 and this court has subject matter jurisdiction under Sec. 1331.

34. Respectfully, Hon. Chief Magistrate incorrectly relies upon the US Supreme Court case of Elk Grove Unified Sch. Dist. v. Newdow, 542 US 1 ( 2004 ) in attempting to utilize the domestic relations exception to jurisdiction to dismiss my action.

35. In addition to references that this action should be dismissed claiming that issues are "inextricably intertwined" with state court matters, the Report and Recommendation makes reference that "consideration of claims decided by Judge Czajka and Judge Hummel in Family Court, Columbia County ( or that are pending before Judge Hummel ) would be inevitable" and later goes on to cite a case stating, "If this Court were to allow plaintiff to pursue this action, it would be forced to 're-examine and re-interpret all the evidence brought before the state court' in the earlier proceedings. As such, this action is barred by the domestic relations exception to this Court's jurisdiction."

36. Respectfully, these references are misplaced and objections are hereby raised to any reliance upon these cases and objections are raised that my claims should be denied as being on the "verge" of being matrimonial. .

37. The recent US Supreme Court decision in Exxon Mobil cited the Ninth Circuit's Decision in Noel v Hall, 341 F3d 1148 ( 9th Cir. 2004 ) in Reaffirming that there is Jurisdiction where independent claims are made. See, Exxon Mobil.

9

38. Very similar to this case, this Ninth Circuit cased cited by the US Supreme Court in its recent Exxon Decision reversed a dismissal under Rooker Feldman in a case where "essentially the same issue of fiduciary duty was being litigated" in both the federal and state courts. Noel v Hall, 341 F3d 1148.

39. This Ninth Circuit Decision, adopted by the US Supreme Court in Exxon Mobil, noted that "The rule that permits simultaneous litigation in state and federal court of overlapping and even identical cases is deeply rooted in our system. As the Court wrote in Atlantic Coast Line Railroad v Brotherhood of Locomotive Engineers, 398 US 281 ( 1970 ) : 'The state and federal courts had concurrent jurisdiction in this case, and neither court was free to prevent either party from simultaneously pursuing claims in both courts' " Noel v. Hall, 341 F3d 1148 citing Atlantic Coast at 295.

40. The Noel court went on to note that "where the federal plaintiff does not complain of a legal injury caused by a state court judgment, but rather of a legal injury caused by an adverse party, Rooker - Feldman does not bar jurisdiction. If the federal plaintiff and the adverse party are simultaneously litigating the same or similar dispute in state court, the federal suit may proceed under the long-standing rule permitting parallel state and federal litigation." Noel v Hall, citing Atlanta Coast Line, 398 US at 295.

41. Clarifying Rooker Feldman a different way, in nearly the exact way in which I have been stating in my prior paperwork before this Court, the Noel court went on to state "If, on the other hand, a federal plaintiff asserts as a legal wrong an allegedly illegal act or omission by an adverse party, Rooker - Feldman does not bar jurisdiction. If there is simultaneously pending

10

federal and state court litigation between the two parties dealing with the same or related issues, the federal district court in some circumstances may abstain or stay proceedings; or if there has been state court litigation that has already gone to judgment, the federal suit may be claim – precluded under Sec. 1738. But in neither of these circumstances does Rooker Feldman bar jurisdiction."

42. When I read this case it talks more specifically about the "inextricably intertwined" issue as the Noel Decision adopted by the US Supreme Court in Exxon Mobil stated, " We have NEVER held that when there are simultaneous suits in state and federal court, in which related or "inextricably intertwined" claims are being litigated, the federal suit must be dismissed under Rooker Feldman. Indeed, we could NOT so hold without violating the rule that permits simultaneous state and federal suits involving NOT ONLY inextricably intertwined, but EVEN IDENTICAL claims. The Supreme Court has repeatedly stated that simultaneous state and federal litigation of overlapping and even identical issues is an important feature of our federal system, see, e.g., Parson Steel, 474 US at 524-525; Doran v Salem Inn, 422 US at 928; Atl Coast Line, 398 US at 295, and we will not interpret the Rooker Feldman doctrine to destroy that feature." Noel v Hall, above. ( emphasis added )

43. To me what this language means is that similar, duplicative and even "identical" issues can be raised in federal and state court and the federal court will still have jurisdiction if it has original jurisdiction which it does over federal civil rights claims and if the claims are not an appeal of a state court judgment.

44. As far as my claims being on the "verge" of being matrimonial, I can read the Elk Grove

11

and other "domestic relations exceptions" cases to know that this doctrine requires there to be some issue which is special to the state court, special to the state court expertise in handling matrimonial and domestic issues, something particular and delicate about the type of issue involved and the applicable law and expertise necessary to handle the issues.

45. There is nothing out of the ordinary about the nature of my federal claims, basic conspiracy, fabrication of evidence and reports, extortion attempts, and abuse of process and denial of due process and other.

46. These types of general issues and claims come up in many other areas of law such as in criminal prosecutions and investigations and in the civil arena as well.

47. It is the federal court that has the expertise and experience in determining these claims, not an Acting Supreme Court Judge handling a matrimonial and custody case.

48. There is nothing special or particular to state law and matrimonial cases about whether an illegal conspiracy is at play and whether an extortion plot exists and again, these types of claims are within the experience and expertise of the federal court, not the state court.

49. As the Ninth Circuit case in Noel adopted by the US Supreme Court in Exxon makes clear, the mere fact that there may be some overlapping evidence and issues is not a bar to jurisdiction whatsoever, even where the issues between federal and state court are "identical", which is not the case here and again, these claims have never been heard or determined in state court and were never even raised before Defendant Czajka by my attorney at the time, Andrew Jacobs.

50. Therefore, it is not appropriate to suggest that just because illegal conduct occurs in and

12

around the context of a matrimonial case that no person and plaintiff may ever get federal relief where illegal conduct has occurred in violation of civil liberties and the constitution.

51. Further, my state court matrimonial attorney has forwarded me a copy of the recent NYS Appellate Division First Department case involving Bridget Marks and this Decision appears to determine that even where a party intentionally falsifies Sexual Abuse allegations, that the party can still have Custody of the child.

52. Therefore, even though I have never sought to vacate or reverse any state court judgment or decision by Defendant Paul Czajka through this federal action as misstated by the Hon. Chief Magistrate, the state court Marks custody case should make it clear that proof of wrongful conduct does not necessarily or implicitly undermine a judgment in state court anyway.

53. So there has never been a basis to this assertion and not only does Rooker Feldman not apply, but neither does the Domestic Relations exception and my claims should go forward.

54. I respectfully remind this Court of some important facts as part of these objections to the Report and Recommendation as follows:

> a) Defendant Kristin Chase attempted extort $250,000.00 in Cash and the Deed to my Kinderhook home by a cell phone call in September of 2003 while I was out of state in Florida on business otherwise it was going to get "f–cking ugly" and yet never mentioned anything about police contact or the courts;
>
> b) Defendant Kristin Chase had already filed a Divorce Action in Nassau County where her mother, Defendant Frances Fernandez resides, in the Eastern District of New York several months before in June of 2003 claiming she lived in Nassau County but had never notified me of this filing and never served me with these papers until after the "process" began in Columbia County and I filed for Divorce;
>
> c) Defendant Kristin Chase never obtained a single police report or filed a police

statement prior to the Ex Parte process with Defendant Czajka even though the NYS Police Barracks in Kinderhook are less than a quarter mile away from our Kinderhook home;

d) Defendant Kristin Chase waited several days and then filed her Ex Parte application through an attorney that receives many lucrative Court Assignments from Defendant Czajka, although this attorney later withdrew from representing Defendant Kristin Chase;

e) the heinous Sexual Abuse allegations were first Disclosed on Oct. 7, 2003, a Tuesday, after a weekend recess from a Hearing in front of Defendant Czajka on Oct. 3, 2003 was going in my direction;

f) at the time of this bombshell Disclosure of Sexual Abuse on Oct. 7, 2003, Defendant Kristin Chase was observed by my then attorney Andrew Jacobs, Esq., "smiling" and "laughing" on the Record within moments before the Announcement of Sexual Abuse which was Not made by the Col. Cty DSS Child Protective Agency but instead by a Law Guardian, Bethene Lindstedt-Simmons, who also receives substantial and multiple lucrative Court Assignments from Defendant Czajka;

g) Defendant Scarduzio, the family babysitter, admitted months later to my new attorney Kevin R. Hall, Esq., that Defendant Kristin Chase had video and audio tapes rehearsing the allegations with my 3 year old son but Scarduzio has never been able to be questioned on this to this very day as I have been denied a Due Process Hearing for well over 18 months now;

h) I have recently found out that Defendant Kristin Chase now claims the tapes which Scarduzio admitted to allegedly were "stolen" from my Kinderhook home and allegedly no longer exist yet Defendant Kristin Chase has produced no Police Reports to back this up as of this date;

i) in 22 months there has been no Due Process hearing on these allegations and the Columbia County Sheriff's Dept has delayed turning over records on a Judicial Subpoena finally issued by Acting Supreme Court Judge Hummel in state court;

j) Defendant Czajka's Court Officer was Mark Bruhmiller was "staying" at my Kinderhook home working with Defendant Kristin Chase to "tip off" Kristin Chase to Private Investigators hired by myself to monitor activities at the Kinderhook home;

k) Defendant Czajka thereafter issued an Order barring me from hiring any Private Investigators in the case violating basic constitutional rights;

14

l) Defendant Czajka, known to be very Stern from the Bench in such cases made No Instructions or comments to Defendant Kristin Chase when she was laughing at the time of the Bombshell Sex Abuse disclosures on Oct. 7, 2003 and Defendant Czajka again known to be very stern in such cases made no instructions or orders against Defendant Kristin Chase despite Warnings from Experts at the Westchester Medical Center that Kristin Chase should not discuss these allegations with my 3 year old son;

m) Defendant Kristin Chase illegally wiped out nearly $28,000 from a Corporate Business Account at Chase Bank within days of applying for the Ex Parte Order in Sept of 2003;

n) Defendant Inv. Skype falsely claimed to myself to be "investigating" the bank theft yet later went on to be the chief Investigator of the alleged sexual abuse and has issued false reports and statements squarely contradicted by Col. Cty DSS records and other evidence;

o) Defendant Czajka protecting Defendant Kristin Chase "on the record" Nov. 10, 2003 by advising her not to answer questions about Czajka's Court Officer at the Kinderhook home and the private investigators;

p) virtually all of my Confidential Business records, computers, disks and other information for Wall Street clients and other items were "missing" by the time Defendant Czajka let me into my Kinderhook home nearly a month after the Ex Parte order near the end of Oct. 2003;

q) Defendant Kristin Chase's second attorney, Juliette Crill, a former Col. Cty attorney and another who obtains lucrative court assignments from Defendant Czajka filing a formal Sex Abuse petition 5 months or more later in Defendant Czajka's Court around the time a "Stay" of Family Court proceedings was issued by Supreme Court Judge Benza in Albany and then attorney Crill moving to withdraw as counsel another 5 months later after Kevin Hall, Esq., filed a habeus corpus by Crill claiming further representation of Kristin Chase would lead attorney Crill to be in violation of the Disciplinary Rules;

r) Supreme Court Judge Benza secretly and sua sponte reversing his own Stay against the Family Court of Columbia County without notice when a Stay is extraordinary relief in the first place;

s) Columbia County DSS and the State Office of Children and Family Services determining as Unfounded the allegations against me; Czajka's Law Guardian Bethene Simmons refusing to interview me, my family, my children from my first marriage, my first wife and other collateral sources for over 13 months from the bombshell disclosures brought out by Defendant Czajka Law Guardian, not Col. Cty DSS;

15

t) Defendant Czajka permitting "on the record" to allow me to see my son in Nov. 2003 but no ACTUAL contact being permitted by Defendant Kristin Chase and Kristin Chase's new attorney, former County Attorney Crill thereafter raising the Sex Abuse nearly 5 months later while the Stay was in play by Benza and while Kristin Chase was seeking nearly $20,000 a month in child support; and more.

55. Please note that while I have received some informal discovery from Col. Cty DSS, there has been NO Formal Discovery allowed yet in this action, nor even a Conference at this stage.

56. Additionally, as stated above, Compliance with Discovery and Subpoenas, including Judicial Subpoenas has NOT occurred in the state case and is over 30 days past due from recent scheduling requirements, in a case where my former attorney Kevin Hall, Esq. and others have stated Discovery should have happened 22 months ago.

57. I believe and assert that a reasonable Juror could infer why there has been such a long delay, over 22 months, in providing full Discovery and believe it is because there is merit to my federal claims and attempts to cover-up the "process" used against me and that most reasonable jurors would find it "shocking" if not more that a mother of a young child would be "laughing" and "smiling" at the time such heinous allegations amounting to anal and oral sodomy upon a 3 year old were being disclosed conveniently after a 4 day recess in a hearing and after attempts to extort and obtain large sums of cash and property.

58. The Court should be apprised and consider that not only has Kristin Chase had her first two attorneys withdraw from representation including Juliette Crill who specifically claimed further representation would create a violation of Disciplinary Rules, but attorney Sam Schmidt has also now withdrawn from representing Kristin Chase.

16

59. Further, that Defendant Czajka appointed Law Guardian Bethene Lindstedt-Simmons who refused to meet with me and my other children from my first marriage and my first wife of over 15 years, but when my first visits with my son occurred in over 18 months and went so well, this attorney renewed efforts to raise the allegations while at the same time attempting to prevent basic Discovery of the full medical records and information from the various validations and others treating my son.

60. This attorney Lindstedt-Simmons has now also withdrawn from the case, at least formally that is and it is unclear what role this attorney may be playing "behind the scenes."

61. I also object to other portions of the Report and Recommendation as follows.

62. It is absolutely inaccurate to state that I filed two motions for Family Court Judge Czajka to be recused.

64. As previously stated in papers to this Court, according to my first attorney Andrew Jacobs, Esq., it was Family Court Judge Czajka who specifically Solicited a Recusal motion to be filed by Mr. Jacobs on or about April of 2004 and there is documentary evidence to show the communications from Defendant Czajka's clerks to Mr. Jacobs as Judge Czajka wanted a formal motion and would not do this by mere letter.

65. Allegedly the basis for Judge Czajka's Solicitation of this motion was due to media advertisements posted in the Columbia County Register Star by myself about inequities and problems in the Family Court without naming Judge Czajka expressly. Yet, Judge Czajka denied this motion after soliciting the motion.

66. It is further inaccurate and improper to state as a fact that Judge Czajka ultimately was removed from my case by his "own motion."

67. The express language of his letter to Administrative Judge Ceresia indicates Judge Czajka himself believed he should be "Disqualified", not that he was voluntarily recusing himself.

68. There is a huge distinction between being "Disqualified" and voluntarily recusing oneself such as to avoid even the appearance of impropriety and it begs the question of what possibly could have changed from the time of the Solicitation by Judge Czajka of a Recusal, not Disqualification, and Defendant Czajka's own admission against interest that he believed he should be "Disqualified" and there still has been No Discovery on this issue.

69. The Report and Recommendation takes time to note that an Article 10 Neglect proceeding was filed against me, but again this Report is very shaky on facts and the sequence of the "process" as Col. Cty DSS had filed a Report in Nov. 2003 indicating there would be NO Neglect filed against me, yet 3 months later the DSS reversed itself after Kristin Chase hired Juliette Crill, an attorney receiving lucrative assignments from Judge Czajka and being a former County Attorney.

70. This issue itself is absolutely a basis for Discovery to be granted as it begs the question Who was influencing the DSS prosecutors to bring these charges against me after their Report indicated there would be no filing several months before and the "timing" of the filing is suspect as well all calling out for Discovery. Reasonably the fabricated Reports and information from Investigator Skype could have been just one of the influencing factors and this issue alone merits Formal Discovery in this case.

18

71. And these issues are exactly why the federal court must exercise jurisdiction as it is very unlikely that Acting Supreme Court Judge Hummel will permit any of these issues at any hearing which has been repeatedly delayed and it is nothing but pure speculation at this stage of what Acting Supreme Court Judge Hummel may or may not do and whether such an issue is deemed relevant to Custody but is certainly relevant to my federal claims.

72. Upon information and belief, the Prosecuting DSS Attorney at the time, Kaleena Richards, has left the Department and I am attempting to obtain her whereabouts at this point in time for Discovery and an EBT which the Matrimonial court will likely never grant justifying federal jurisdiction in this case.

73. Upon information and belief, attorney Lindstedt-Simmons, now withdrawn as Law Guardian, has also been relieved and removed from another case as Law Guardian that Defendant Paul Czajka is no longer assigned to also involving similar allegations and parties.

74. The record and Report should be clarified regarding Acting Supreme Court Judge Hummel's Decisions on the two Habeus Corpus petitions.

75. Again, in the first Decision, at no time did the Judge find that the issues were not meritorious but only that I should pursue relief with then Judge Czajka or the Appellate Division.

76. In the second decision, Judge Hummel expressly noted that meritorious issues were raised and was scheduling the matter for a Hearing. That scheduling has now been repeatedly put off since Jan and Feb of 2005, coincidentally following the tracking and progress of this federal case

19

after originally supposed to be scheduled for a Hearing in late January or early February of 2005, now another five months later for Due Process purposes.

77. Strikingly, however, while the Report and Recommendation refers to Judge Hummel's original suggestion in the first Habeus Decision that I was "Judge Shopping", since Judge Czajka has been "Disqualified" from the case and no longer "formally" involved, Judge Hummel commented on the Record on or about early March of 2005 that this was one of the most messed up cases in his nearly 14 years on the Bench, comments made BEFORE it appeared that the federal action was going to be dismissed on Rooker Feldman.

78. This Court must be reminded that there has never been a Petition filed and a Hearing granted on the Sexual Abuse allegations.

79. Upon getting the DSS Discovery on my own behalf after Mr. Hall had requested same in his original habeus back in July and August of 2004, Discovery which I received After Judge Czajka was Disqualified, I realized there were crucial and critical pieces of information supporting my position which should have been obtained by my first attorney, Andrew Jacobs.

80. Prior to his recent suspension, Mr. Hall indicated to me that he was "certain" based on conversations with Mr. Jacobs that Mr. Jacobs had material information on what happened with the secret, sua sponte reversal by Judge Benza and other information regarding Judge Czajka.

81. I attempted to get cooperation from Mr. Jacobs for several months while this federal action was going back in motions over the last several months but Mr. Jacobs was refusing to return my calls and respond to my faxes after being paid $30,000.00 or more from me to handle my case.

20

82. In fact, the information I received from DSS was so critical and related in time back to Sept of 2003 when this "process" began with Defendant Judge Czajka that I was on the verge of filing against Mr. Jacobs himself as not only did he not obtain this basic Discovery by the time of the October and November hearing dates in 2003, he still had not obtained any of it by the time of the June 9, 2004 hearing and it was only at the last minute during that hearing that any mention of sex abuse was raised in "disposition" only, not in a formal disposition, and Mr. Jacobs was totally unprepared for this.

83. Unfortunately, Mr. Jacobs recently passed away a few weeks ago and will never be able to tell me what happened with Judge Benza, nor what happened with Judge Cannizzaro kicking the case back to Judge Czajka although Mr. Jacobs had told me I would find out "someday."

84. Mr. Jacobs did preserve some issues in the June 9, 2004 hearing, however, by objecting to Judge Czajka that Attorney Crill for Kristin Chase was "running" the DSS Case and that Mr. Jacobs was surprised when the sex abuse issues were "briefly" addressed in disposition. Both Crill and DSS Attorney Richards are no longer in the picture, however, but upon information and belief Crill is still around for an EBT.

85. Upon information and belief, Mr. Hall was "warned" he would be suspended and "run out of Columbia County" for opening up the other case mentioned above involving Judge Czajka and Bethene Lindstedt-Simmons and upon information and belief, this case is under investigation by various authorities for similar conduct to my federal claims in this action.

86. Because there has Never been a Hearing on the Sex Abuse allegations and never been full

21

Discovery or formal Discovery, it simply is unknown presently exactly how the sequence of acts occurred, Defendant Skype's full involvement, and the involvement of the other defendants.

87. This is exactly why Discovery should be allowed and the claims permitted to go forward as independent from any Judgment or Decision by Judge Czajka which are being Appealed and my state Appellate attorney will have the Appeal filed within days. The Appeal is based on the lack of evidence and proper statutory and case standards and is totally separate and distinct from the federal claims herein and it is the Appeal in state court that involves the Judgment and Decisions of Judge Czajka.

88. As far as Venue is concerned, again, the Bank where the Corporate Funds which were stolen by Defendant Kristin Chase in the beginning of this "process" is located in Manhattan in the Southern District, I reside in the Southern District, the bulk of my business relationships which have been formed and damaged are here on Wall Street and in the Southern District and in fact Defendant Kristin Chase has recently been further attempting to interfere with business relationships located right here in the Southern District in Manhattan, Defendant Kristin Chase began her Divorce in Nassau County in the Eastern District, Frances Fernandez resides in the Eastern District and Kristin Chase has claimed in court documents to reside in the Eastern District, all of which is closer to the Southern District than the Northern District, witnesses from Westchester Medical are in the Southern District, many witnesses who know Defendant Chase and I from prior to our marriage and since reside in the Southern and Eastern District, employees at Chase Bank are in Manhattan in the Southern District and this was my choice of venue.

89. I respectfully submit that there is a sufficient nexus for Venue purposes in the Southern

22

District and also based on convenience factors and my choice of venue.

91. However, rather than Dismissal on Venue grounds, I do consent to Transfer to the Northern

District as alternative relief.

WHEREFORE, I respectfully submit the within as Objections to the Report and Recommendation herein and pray for an Order denying dismissal on subject matter jurisdiction and related grounds and Denial of dismissal on Venue grounds and granting Venue in the Southern District or alternatively transferring Venue to the Northern District.

Dated: 5/27/2005

_John T. Chase_
JOHN T. CHASE, PRO SE PLAINTIFF

SWORN TO BEFORE ME THIS 27th DAY OF
MAY, 2005

_Pearl Aird_

PEARL E. AIRD
Notary Public, State of New York
No. 01AI6076025
Qualified in Bronx County
Commission Expires ____ 20 06